You can wait to look for it there if that's fine. May it please the Court, Jeffrey Epstein here on behalf of Mr. George Covington III. And the issue before this Court is whether Mr. Covington is a career offender and whether his prior prison-escape conviction is a predicate crime of violence as defined by the Sentencing Guidelines and Provisions, Section 4B. Now the Government and Mr. Covington both agree that that is the sole issue of the case. We also both agree that the Court's analysis report should be found in Section 4B.1.1 of the Sentencing Guidelines. We also agree that the Michigan Statute 750.193 is not categorically a crime of violence. We agree to that. Mr. Covington pled guilty under that statute to breaking prison and escaping. That's what he pled guilty to. And I believe that the words breaking prison and escaping is not in and of itself a crime of violence because just those words do not represent a serious potential risk of harm to another. So just if I can clarify then, the way you're analyzing it under the recent ISCAMS case is to break it up, the way the statute has broken it up, dividing it or reading it as divisible in that way. Yes, yes. And that once you do, that the relevant crime here is breaking and escaping. The relevant crime here is breaking and escaping. And not further divisible. Yes. And that relevant crime in and of itself, because the government may represent that he was charged with breaking prison, he admits to breaking prison, he was convicted of it, so that should be enough to say it's a crime of violence, and I say that that's not. What's it mean to break here? Break is some force necessary to open something. If a defendant has to open the front door and walk out, he walks to the parking lot, he enters the car, he drives away. That person has break. Prison is. So if a person exits through a window, whether it's raised or he has to raise it, does that constitute breaking? It does. If a person has to use some force to open the window. However minimal. Yes. According to Michigan. Well, however minimal is enough to break. So Mr. Covington did use force to open the window. We agree with some of the facts of the case. Mr. Covington was in a halfway house in Muskegon, Michigan. We agree that Mr. Covington left, escaped the halfway house within moments of returning to the halfway house from the community. We can logically infer or reasonably infer from the facts that Mr. Covington was in civilian clothes. And I only say that because he was in a halfway house and he had just returned from the community, so we can logically and reasonably infer that he was in civilian clothes at the time that he left the halfway house. Now, I just want to make clear that this is not a, in my opinion, not a jailbreak case, not a prison plot case, not a case where a person is breaking out a prison window and choosing a bar and scaling a prison wall. But there's a recent case from our circuit that deals with leaving a secure area. Are you familiar with it? I think one of you submitted that as a supplemental case. The Stout case? Say it. U.S. v. Stout. I want to address the case that the Court is referring to. I'm assuming you're referring to it. I may have the name wrong, but it's a recent Sixth Circuit case. Well, let me – Is that the one where they – I don't remember. Go ahead. I don't want to assume you're talking about a different case. But let me address secure facilities. So there are some things that are commonly associated with secure facilities and non-secure facilities. And the Court is looking for, and you're probably looking for the case of U.S. v. Stout that the government cited in their brief. That person was in a secure facility, a jail, a county jail. There are some things commonly associated with county jails. County jails, the inmates' movements are restricted. They're moved from point A to point B. That's one thing. What did we hold in that case? Sorry? What did we hold in that case? Well, the inmate in that case escaped county jail through a hole in the jail wall and ran away. The Court held that that was a crime of commerce. So it's similar, except that it's a jail as opposed to a – that is the case, I would say. Yes. It's similar, except a hole and a window are not that categorically different, right? Yeah. So you go through a hole and you leave. And we said that was a crime of violence. And this is different because it's not a jail. It's a halfway house. That's the first thing, yes. What else? Mr. Covington was in a halfway house. And members of a halfway house are in non-secure settings. So I think one of the first things for the Court is to classify leaving a halfway house. And I think leaving a halfway house is a non-secure setting. And if the Court starts with the premise that he left from a non-secure setting, I think you're going to find that there is much less propensity for violence where a person is leaving in a non-secure setting, in a place where movements are not restricted, and a person is not in a striped jail or prison uniform. So that makes it more like a walkaway. To me. I think that an individual running through a jail or prison house yard in a striped uniform with armed guards in a prison jail is much more likely to resist being caught than the guy that's leaving out of a window in a halfway house where there's no guards. There's no armed guards. There's no raiders. Do they still wear stripes these days? Sorry? Do they still wear stripes these days? Well, in some states. But I think that the distinction there is that people in jail and prisons aren't uniforms. People in halfway houses are not. And Mr. Covington, you can assume that he was not. And I think that there's a higher propensity for violence when someone leaves a prison than a jail. So in this case, are we to look at the degree of force applied by the escaping prisoner, or are we to look at whether or not the actions of that prisoner are likely to cause a reaction by a guard, and that might lead to violence in trying to stop the escaping prisoner? What exactly are we to focus on in this matter? The court has to focus on Mr. Covington's actual conduct. You have to focus on what he did exactly. But the court has to focus on that. Let me see what he did. I think I already said that. He came back from doing laundry. He was there for a few minutes. He was told by the staff that he was going to be in trouble, possibly return to prison. He went to his room right away. He opened up his window. He crawled out of his window, and he ran. Now, the court has to look at that conduct, Mr. Covington's conduct. I believe that the court has to look at the conduct from the period of his escape only. I don't think the court can look at the conduct. Why are you saying we have to look at the conduct? I thought we had to look at the statute. I thought we weren't supposed to look at it. Well, if we are using that modified categorical approach. But within break and escape, all we have to do is determine whether break and escape includes some activity, which is not a crime of violence, and then your client wins. It doesn't have to be that he even did it. As long as you put within that context of language of that portion of the statute that's been divided as much as it can be divided, which is break and escape, if any break and escape is not a crime of violence, then your client wins under this case. That's true, but the government will then go to his actual conduct, his actual running away from the facility, and the government will argue that someone could have happened across Mr. Covington. Someone could have confronted Mr. Covington. But the logical purpose for that argument has to be that, accordingly, someone who breaks and escapes can do something which is not a crime of violence, thereby depriving the ability of the government to treat break and escape as a crime of violence ever. Yes, I think that the escaping person has to do something more than just climb out of his window and run away. The person has to be armed with a weapon. The person has to be yelled at by staff to stop. The person has to be— I don't understand. You're saying if he's armed with a weapon and all he's charged with is break and escape, then that could be a crime of violence? I think that in that situation, if the guy has a weapon, that there could be a serious potential— That is my question. Could it be a crime of violence under this campus? You don't look at what happened. You look at what the statute says. As subdivided. If we just look at the statute, Mr. Covington certainly is not a crime of violence. I think where we're headed isn't that the question, that the modified categorical approach remains a categorical approach. It doesn't become a factual approach. What it does is it looks at the Shepard documents, correct? Yes. And then it decides, this is a divisible statute. What is the category? And then, after that, what your guy did doesn't matter anymore, does it? I don't think it does. If anybody could violate the name of what he did nonviolently, you would, right? I agree. And I'm mostly going to respond to what I can. That might not have been the law before this campus, but it's pretty close to the law after this campus. Well, I should stop there. Okay. Fair enough. Well, you know, I don't want to kill myself, but because the government is going to argue about his actual conduct, and I was addressing it, and I think that the court can't really focus on that. Number one, because most of the conduct that we're going to say happened is conduct that is not during the course of the escape. If he would have encountered somebody in the woods or as he jumped from the beds, the escape is already concluded according to the Michigan law, escape is not a continual crime. And we've already resolved that this pal-to-scape theory is no longer good law, correct? That's correct. Now, isn't it true, though, that your theory after this campus would mean that escape under Michigan law can never be a crime of violence, escape under that statutory provision? Well, I think that... At least under break-and-escape part of that. If you're breaking it down... Which is the most egregious part of it. Yes, if you're breaking it down as a discount, it cannot be a crime of violence. That's kind of the effect of discounts. Thank you. Counselor? Your part of the government didn't shut down. I am an exempter. You're a what? I am somehow excluded from it. We're pleased that you've been excluded. We're pleased that you've been excluded. No, I don't think you're allowed to volunteer, but anyway... I was glad to see that you were open today as well. I wasn't sure whether I was going to knock on the door and know I'm home. I think that because the law has been clarified after our briefing, I want to just start with how the structure works now. We apparently agree that the statute here is a divisible statute. We apparently agree, although I didn't necessarily expect that we would, that he has been convicted of the break, prison, and escape variant. So that leaves us with whether or not that variant is categorically a crime of violence. You would agree we can't subdivide that one any further? I think that is right. We're sort of compelled by discounts to come to that conclusion. I think that is right. I also actually do not take the position that defense counsel indicated that I would look to any facts in making that determination. I don't believe that the facts are relevant. I think they would be only relevant to whether or not he was convicted of that particular variant. So I think that leaves us with whether or not that variant is categorically a crime of violence. I would direct the court to a couple of additional cases that weren't cited in any of the briefing or in the 28 jail letters. One is this court's opinion in Collier. In that case, this court held, and that's 493 F. 3rd, 731. In that case, this court held that a jail break certainly deserves categorical treatment as a violent felony. I would also... That's a jail break. It does say jail break. However, we should also remember, I think at some point someone said that if any conduct falls under the break, prison, and escape variant that does not constitute a crime of violence, that that would categorically not be a crime of violence. I don't think that's right. I think that after James, you look at the ordinary case and that you cannot go to... Anyone could think of a possible nonviolent offense that might be categorized under a particular variant, but James says... But here we don't have to think very hard because it happened in this very case. I would dispute that. This court has only held that two types of escape offenses are not categorically crimes of violence, walkaways and failures to report. Under the Michigan statute, those would both fall under a different variant. Now, I would agree that escape and the failure to... or leaving the prison without due process of law, without being discharged by due process of law, might be much more problematic variants for us, but I would not concede that prison break and escape, I think whenever you have any sort of prison break and escape, that is categorically a crime of violence. Wouldn't an escape from a halfway house be a lot more like a walkaway than it would anything else because it's a non-secure facility? Well, in this case, since we're facts to facts in this case, even though I don't know that it's actually relevant, but we'll make this the example here. Mr. Covington came back to this halfway house, and it does not say halfway house anywhere in the record. He came back to this halfway house late, was told, you're going to be sent back to prison, and was put in a room, apparently, where he had to go out a window, jump a fence and run through the woods in order to get away. This is not a situation where he simply walked out the door and would not be even viewed as potentially having, as fleeing his incarceration in a new prison. And that's where this court and the Supreme Court have drawn the line. It's whether or not the person, during the course of their escape, might be discovered, much like in a burglary situation, might be discovered as being in flight, and that would result in the danger. But it is somewhere between a pure walk away and the stop. At least as it's implied in this case. I actually, again, don't agree, in part because of the fact that he had just been told that he was about to be lodged in prison, and was apparently unable to leave for a normal mode of egress from the building. He had to go out a window and jump a fence. And I think that makes a difference if we're going to get into... But the crime is surely going to apply regardless of what he's told. Again, we're not supposed to look at the facts. But if the crime is just breaking, and going out the window, and walking until he gets to a fence, I'm not sure whether the person drowns somewhere else. But if that's breaking, then it would seem like breaking is... It's not the same as runaway, but it's not the same as what was going to be discovered. So that's not something I would think. That doesn't say you win or lose. It says you're struggling with something that's in the way. Well, I would resort to the hard cases make bad law. I would resort to the hard cases make bad law maxim. But isn't that the problem with your analysis that seeks to look beyond the strict categorical analysis that De Camp or however you pronounce it says? It seems to me that that's exactly what Justice Kagan was saying. We are winding ourselves around facts. We are inexplicably trying to figure out where we are in this analysis. And then she says it's fairly simple. Is the statute divisible or is it not? If it's divisible, what division do you fall under? And then the question, then the facts fall away. She makes it clear it's like an on and off switch. You turn off that switch. You set those facts aside because that makes this test so much more functional. Then the simple question is can you do this nonviolently? If you can and you are in a categorical test, then categorically it's not a crime of violence and we're done. I absolutely agree. And I believe that Brakes, Prison, and Escape is categorically a crime of violence under this Circus precedent. I think the only types of offenses that this court has held are not crimes of violence within the escape context are walkaways and failures for court, and neither of those can reasonably be put in the Brakes, Prison, and Escape experience because in order to be charged under Brakes, Prison, and Escape, the prosecutor is going to have to prove some sort of breaking, and a walkaway offense does not have that. Well, going through a window is obviously not... Well, going through a window and jumping a fence both require some amount of force, and I agree. I thought it was a case that said doors half open, you push it the rest of the way, and you just walk out the door. That is true in the burglary context. Unfortunately, Michigan law hasn't gotten very far into this. This is another one of these situations where Michigan law isn't worried about DeKalb, so we haven't really gone there. Breaking in might be different than breaking out. But isn't that exactly the important distinction? I mean, isn't that the key, is that the crime of burglary has to do with doing something that initiates, that moves toward a confrontation. I break into your house, you may be there because I'm coming in, and the confrontation is thereby possible. A walkaway, a climb out the window, a walk out an open door is an avoidance of that confrontation. Anyone who saw Mr. Covington jumping out the window is going to know that he is a prisoner trying to escape. But isn't the distinction here that the cases that you refer to are secure facilities, so someone would be there looking and he has thereby created the possibility of confrontation. But if he's just walking out of a completely unguarded facility, then that possibility, that underlying similarity with burglary, falls away. I don't believe it does. There were obviously staff, again, that were staffing the facility and you could have seen him. But again, moving away from the facts, to read breaking and escaping the way that you have as including these other types of offenses, this renders the Michigan statute as having surplus. If you look back at the Michigan statute, there are a number of variants, and one of the variants is leaving the prison without being discharged by due process of law. And walkaway offenses are going to fall much more logically into that variant. Likewise, the escape variant would encompass much more activity. I submit that breaking and escaping requires conduct that, again, in the ordinary offense, not on the marginal offense. James says that you look to the ordinary offense. In the ordinary offense, breaking and escaping is categorically a crime of violence. It just seems like if you define it that way, then the Shepard documents might suggest that this was escaped without breaking. Mr. Covington was charged by the prosecutor and pled guilty to breaks, prison, and escapes. Now, we all know that— I thought it was just to the statute as a whole. He was specifically charged? In the information, which is in the record as an attachment to the government's sentencing memorandum and is discussed in the sentencing transcript, he is charged in the amended felony information as breaks, prison, and escapes. And he pleads guilty to that charge. I agree. If he was charged merely with the generic escape charge, we would be in a different and, I think, more difficult conversation here today. But he pled guilty— You're saying under the charging documents, there's no way we can say that he was escaping without breaking. I think that's right. I believe under the information, that's clear. In the normal course, in terms of looking at all the Shepard documents, one might make an argument in a different case that the facts in the plea policy are relevant to what he was charged with. In this case, I believe it's clear from the felony information. Thank you, Counselor. The case will be submitted.